UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eldridge Chatman,

        Plaintiff,

vs.

Craig Taylor, acting in his
individual capacity as an officer
of the Minneapolis Police Department,
and the City of Minneapolis,

        Defendants.

Case No. 08-CV-6097 (RHK/FLN)

AMENDED COMPLAINT

JURY TRIAL DEMANDED
UNDER FRCP 38(b)

For his Amended Complaint, plaintiff Eldridge Chatman ("Chatman") hereby states and alleges as follows:

1. This is an action for money damages for injuries sustained by Chatman as a result of the use of excessive force, unreasonable seizure, and violation of his constitutional rights by defendant Craig Taylor ("Taylor"). Plaintiff Eldridge Chatman also asserts a claim against the City of Minneapolis pursuant to *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

2. Chatman brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1342(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

3. The amount in controversy exceeds $75,000, excluding interests and costs.

4. Chatman is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

5. Defendant Taylor, upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the Minneapolis Police Department.

6. Defendant City of Minneapolis is a municipality duly incorporated under the laws of the State of Minnesota.

7. At around 11:00 a.m. on April 11, 2008, Defendant Taylor was asked to assist the Fourth Precinct Community Response Team in executing a search warrant at apartment #305 at 2415 North 3rd Street, Minneapolis, MN 55411. Before they left for the subject apartment building, Taylor and the other officers on the search warrant entry team ("SWAT") were briefed on the details of the investigation and the suspect at issue.

8. At all times material herein, Chatman rented apartment #312 at 2415 North 3rd Street, Minneapolis, MN 55411.

9. Accordingly, Chatman's apartment was located within the same apartment building, and just down the hall from, the apartment that was the target of the officers' search.

10. At approximately 11:18 a.m. on April 11, 2008, the police arrived at 2415 North 3rd Street, entered the apartment building, and began to approach #305, the target apartment.

11. Around the same time, Chatman walked down the third-floor hallway of the apartment building from his apartment to his mailbox.

12. As Chatman walked towards his mailbox, he saw Taylor and the other officers at the far end of the third-floor hallway.

13. Taylor, who was leading the officers, signaled for Chatman to come towards him. Taylor was dressed in full uniform and carrying a shoulder-fired submachine gun.

2

14. Chatman acceded to police authority, followed Taylor's instructions, and began walking down the hallway toward the officers.

15. Just as Chatman reached Taylor and the other officers, Taylor used his gloved left fist to deliver a sudden blow to Chatman's face, hitting him with such force that Chatman defecated on himself.

16. A second officer then proceeded to strike Chatman in the stomach with a baton.

17. At the time he was struck, Chatman was not posing a threat to the officer or others, nor could he reasonably have been thought to present such a threat.

18. Chatman was told to get on his knees and to put his hands behind his back. Chatman was subsequently handcuffed and told to lie down.

19. The officers did not release Chatman until after they executed their search of the neighboring apartment and secured the suspect that was identified in the search warrant.

20. Chatman did not commit any crime on April 11, 2008; nor was he charged with any.

21. The force Taylor used on Chatman was unauthorized, excessive, and constitutionally improper.

22. Upon information and belief, the force Taylor used on Chatman was malicious and for the very purpose of causing pain and/or injury.

23. Although Taylor's supplemental police report stated that Chatman showed no signs of injury, neither Taylor nor any of the other officers involved in the search ever spoke with Chatman about being hit, let alone inquired as to whether he needed any medical assistance.

24. Three days later, on April 14, 2008, Chatman went to NorthPoint Health and Wellness Center's medical clinic complaining of continuing jaw pain, anterior head pain, and dizziness since the time of the assault. Chatman was prescribed some pain medication and ordered to follow up with a dentist if his jaw pain did not subside.

25. Chatman returned to NorthPoint Health and Wellness Center on May 5, 2008. Chatman again complained that he continued to experience symptoms of the head injury he suffered as a result of the assault three weeks prior, including headaches and a recent episode where he lost consciousness. The doctor who examined Chatman ordered a computed tomographic ("CT") scan of Chatman's head to rule out the possibility of a subdural hematoma. The CT scan was scheduled for May 19, 2008.

26. On May 18, 2008, Chatman was found by his neighbor on the floor of his apartment in a state of semi-consciousness. Chatman had been lying on the floor of his apartment for one to two days and was experiencing confusion, upper extremity weakness, incontinence of bladder and stool, and severe headaches.

27. Chatman was brought to the Hennepin County Medical Center ("HCMC") where he underwent neurological evaluation. Chatman presented with symptoms of traumatic brain injury medically recognized as indicative of subdural hematoma, including increased daily headaches, altered consciousness and cognitive functioning, confusion, and dizziness.

28. A CT scan done at HCMC on May 18, 2008, revealed that Chatman was, in fact, suffering from a large right subdural hematoma that required immediate surgery.

29. Subdural hematomas are pools of blood that collect between a person's dura matter and piarachnoid matter as a result of head trauma. Merck Manual § 21, 2572 (18th ed. 2006). Subdural hematomas, along with their symptoms, may develop gradually over a

period of weeks after a head injury occurs. *Id.* Surgical drainage is often necessary to prevent and treat the brain shift, compression, and herniation that are caused by subdural hematomas. *Id.* at 2579.

30. Because of the dangers associated with Chatman's condition, Chatman underwent emergency evacuation of the subdural hematoma via burr-hole drainage that same day.

31. On May 23, 2008, Chatman was discharged from HCMC to Knapp Rehabilitation Center, an inpatient rehabilitation facility.

32. On June 2, 2008, a follow-up CT scan revealed that Chatman was suffering from significant reaccumulation of subdural hematoma. Accordingly, a second burr-hole drainage surgery, this time requiring bilateral drainage, was performed on June 6, 2008.

33. Since the assault occurred on April 11, 2008, Chatman has incurred special damages, including significant medical expenses that total over $112,000 to date, as a direct and proximate result of the excessive use of force and other violations of his constitutional rights by Taylor.

34. Upon information and belief, Taylor tried to cover up his misconduct by filing a false and misleading police report in this matter. Taylor's supplemental police report contains several materially false claims and statements regarding the conduct of Chatman in an effort to contrive an excuse for his unconstitutional conduct, including allegations that Chatman "refused all commands," "had a serious look of defiance in his face and his body movements [that] indicated that he would stand his ground, and "bladed his body" in a manner that limited Taylor's options as Chatman approached.

35. Defendant Taylor's attempt to explain his unnecessary use of force is wholly unbelievable and materially insufficient.

36. Axiomatically, Chatman did not actively resist any arrest; nor did he attempt to evade any arrest by flight.

37. Further, Taylor and many of the other officers present were heavily armed at the time of the incident.

38. It was plainly observable that Chatman had no weapons.

39. Upon information and belief, the City of Minneapolis failed to take any disciplinary action against defendant Taylor as a result of his conduct in this incident.

40. Due to the fact that the City of Minneapolis has historically failed to discipline the police officers that are members of its SWAT team for use of excessive force and unreasonable seizures, these officers do not feel constrained from using excessive force and unreasonably seizing citizens when executing warrants or engaging in other law enforcement actions as part of the SWAT team, knowing the department will not investigate their actions adequately nor impose negative sanctions on them.

41. The effect of the department's failure to discipline has led other Minneapolis police officers to believe they could (as defendant Taylor did) get away with using excessive force and unreasonable seizures when executing a warrant, or taking other law enforcement actions as a member of the SWAT team.

42. Plaintiff demands a jury trial as to all issues of fact herein.

COUNT ONE

42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS BY DEFENDANT TAYLOR

43. Plaintiff realleges the allegations contained in paragraphs 1-42 herein against defendant Taylor.

44. By the actions described above, Taylor, under color of state law, violated and deprived Chatman of his clearly established and well-settled civil rights to be free from the use of excessive force and unreasonable seizure.

45. Defendant Taylor subjected plaintiff to this deprivation of rights either maliciously or acting with reckless disregard for whether plaintiff's rights would be violated by his actions.

46. As a direct and proximate result of the acts and omissions of defendant Taylor, Chatman suffered severe injuries, was forced to endure unnecessary pain and mental suffering, and was thereby damaged in an amount yet to be determined, but believed to be well in excess of Five Hundred Thousand ($500,000) Dollars.

47. Punitive damages are available against Taylor and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the differing pleading standard set forth in Minn. Stat. § 549.20.

48. Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT TWO

## CIVIL RIGHTS VIOLATION BY DEFENDANT CITY OF MINNEAPOLIS

49. Plaintiff realleges the allegations contained in paragraphs 1-48 herein against defendant City of Minneapolis.

50. Defendant City of Minneapolis intentionally, knowingly, recklessly, or with deliberate indifference to the rights of citizens, failed to supervise, instruct, and train, including through proper discipline, Officer Taylor to refrain from using unreasonable force and unreasonably seizing citizens.

51. Before April 11, 2008, defendant City of Minneapolis, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its police personnel, and in particular its SWAT team - including Officer Taylor - of using excessive force and unreasonable seizures.

52. As of April 11, 2008, defendant City of Minneapolis maintained a custom and practice of deliberate indifference to use of excessive force and unreasonable seizures by the officers serving on its SWAT team.

53. Defendant City of Minneapolis, directly or indirectly, under color of state law, approved or ratified the unlawful, malicious, reckless, or wanton conduct of Officer Taylor.

54. As a direct and proximate result of the acts and omissions, systematic flaws, policies and customs of defendant City of Minneapolis, Chatman suffered injuries, was forced to endure unnecessary pain and mental suffering, and was thereby damaged in an amount yet to be determined by a jury.

55. Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

WHEREFORE, plaintiff Eldridge Chatman prays for judgment against the defendant as follows:

1. As to Count One, a money judgment against defendant Craig Taylor for compensatory damages in an amount in excess of Five Hundred Thousand ($500,000) Dollars and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorney fees, under 42 U.S.C. § 1988 and prejudgment interest;

2. As to Count two, a money judgment against defendant City of Minneapolis for compensatory damages in an amount to be determined by a jury, together with costs, including reasonable attorney fees, under 42 U.S.C. § 1988 and prejudgment interest; and

3. For such other and further relief as this Court deems just and equitable.

FLYNN, GASKINS & BENNETT, L.L.P.

Dated: 9/21/09

Robert Bennett, #6713
Ryan O. Vettleson, #312915
Ashley A. Wenger, #0388340
333 South Seventh Street, #2900
Minneapolis, MN 55402
Telephone: 612-333-9500
Attorneys for Plaintiff